UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **CITY OF KENNETT, MISSOURI,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:14-CV-33-SNLJ |
| | ) | |
| **UNITED STATES ENVIRONMENTAL** | ) | |
| **PROTECTION AGENTCY, et al.** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

This matter is before the Court on plaintiff's Motion to Complete the Administrative Record and to Produce Expert Reports, filed on June 4, 2015 (#31). The defendants produced the administrative record in this case on January 30, 2015. The plaintiff was required to inform the defendant no later than February 27 whether it would seek to supplement the record and file its motion no later than March 9, 2015. Then defendants were to have 45 days in which to file a response. Plaintiff contends that the record was 10,000 pages long, so it was unable to determine that it needed to supplement the record until after the deadline. The Court has amended the case deadlines to allow defendant, the United States Environmental Protection Agency ("EPA"), 45 days to respond. The matter has now been fully briefed.

The plaintiff City of Kennett seeks review of the EPA's approval of the State of Missouri's "Total Maximum Daily Load" ("TMDL") established to regulate pollutants

1

affecting the Buffalo Ditch watershed. In particular, according to the Complaint, Buffalo Ditch suffers from problems with its "dissolved oxygen" levels. Federal regulations require states to develop TMDLs and submit them to the EPA for review and approval; Missouri's Department of Natural Resources ("MDNR") submitted a TMDL for Buffalo Ditch to the EPA on February 23, 2010. The EPA approved the TMDL for Buffalo Ditch (hereinafter, the "TMDL") on March 3, 2010. According to the Complaint, the TMDL hypothesizes that low dissolved oxygen levels are the result of one or more of the following factors: (1) excessive loads of decaying organic solids; (2) too much algae in the streams as a result of the excessive phosphorus or nitrogen loading; (3) high consumption of oxygen from decaying matter on the streambed; (4) physical factors associated with low reaeration rates; and (5) high temperatures due to loss of riparian vegetative canopy.

The approved TMDL aims to address the low dissolved oxygen levels by calling for a significant reduction in wasteload from the City of Kennett's Wastewater Treatment Plant ("KWTP" or "Wastewater Plant") for total suspended solids, total nitrogen, total phosphorous, and biochemical oxygen demand. Plaintiff asserts that the TMDL will not address the impairment to dissolved oxygen levels and that, instead, the City's taxpayers will be forced to fund construction of remedial structures and programs at the KWTP rather than funding other social needs. Plaintiff therefore filed this lawsuit against the EPA seeking, among other things, an order vacating the Buffalo Ditch TMDL and enjoining the EPA or MDNR from enforcing it.

The City brings this action under the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), and asserts that the EPA's approval of the TMDL was arbitrary and capricious. "Judicial review under the Administrative Procedures Act is ordinarily limited to the administrative record that was before the agency when it made its decision, precluding a court from conducting a de novo trial and substituting its opinion for that of the agency." *McClung v. Paul*, 788 F.3d 822, 827 (8th Cir. 2015) (internal quotation omitted; quoting *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004) omitted). The agency in question --- here, the EPA --- is tasked with preparing the record, which "consists of all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) (citing *Lloyd v. Illinois Regional Transp. Authority,* 548 F.Supp. 575, 590 (N.D.Ill. 1982); *Tenneco Oil Co. v. Department of Energy,* 475 F.Supp. 299, 317 (D.Del. 1979)).

Here, however, plaintiff seeks to supplement the administrative record with six items and its "expert reports." Those items are as follows:

1. Watershed characterization report.

2. Model calibration memo.

3. Model validation memo.

4. Site-specific sampling and analysis plan ("SAP").

5. Water quality study data.

6. All prior drafts of the TMDL.

"If the contemporaneous administrative record leaves 'no need for additional explanation of the agency decision,' a party petitioning for review must make a 'strong showing of

3

bad faith or improper behavior' before a court will allow supplementation of the record." *McClung*, 788 F.3d at 827 (quoting *Voyageurs*, 381 F.3d at 766). Plaintiff suggests at first that the six enumerated items it seeks are referenced and relied upon in the Administrative Record but were somehow not included among its documents. Plaintiff states that it does not need to show bad faith under these circumstances, relying on *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (overruled on other grounds) and *Ad Hoc Metals Coalition v. EPA*, 227 F. Supp. 2d 134, 140 n5 (D.C. Cir. 2002).

Defendant responds that each of the six enumerated items either is in fact included in the Record or does not exist. (*See* #38-1 at ¶¶ 8-13.) Defendant's position with respect to each of the items is summarized below:

    1. Watershed characterization report: Not submitted by the state but information is in the Record in some form.

    2. Model calibration memo: Not submitted by the state but information is in the Record in some form.

    3. Model validation memo: Not submitted by the state but information is in the Record in some form. In addition, although a contractor was supposed to complete such a memorandum, it was never created.

    4. Site-specific sampling and analysis plan ("SAP"): Already included in the Record.

    5. Water quality study data: Already included in the Record.

6. All prior drafts of the TMDL: The EPA files do not include earlier drafts of the TMDL, and the State did not submit earlier drafts. Any drafts that were in EPA's possession are included in the Record.

Plaintiff does not address defendant's explanation regarding either the existence of or inclusion of five categories of documents in the Record. The only documents expressly addressed by plaintiff in its reply brief are the "prior drafts" (Item #6), which plaintiff says "are obviously directly related to [water quality and causes of low dissolved oxygen level] issues with respect to Buffalo Ditch itself." (#43 at 8.) However, the defendant is clear that it reviews and approves (or disapproves) only the final TMDL submitted by the State. Plaintiff cites no authority that requires an agency to request and review all drafts of a TMDL (or equivalent); defendant states that all drafts considered by the EPA are included in the Record. To require defendant to include drafts in the Record regardless of whether they were considered by the agency would be inconsistent with the purpose of the Administrative Record. Because plaintiff says nothing about the remaining five categories of documents it seeks to add to the record --- and because it appears that there is no basis for adding them to the Record --- the Court will deny plaintiff's request with respect to the six categories.

Next, plaintiff seeks to supplement the record with certain "expert reports" that were apparently created for this litigation. Plaintiff states that this Court may review its experts' affidavits to obtain background information and review whether the agency followed all statutory requirements, relying on *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1427-28 (6th Cir. 1991); *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 286 (D.C. Cir. 1981); *Asarco, Inc. v. U.S. Envtl. Prot.*

*Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980); and *Conservation Law Found. v. Clark*, 590 F. Supp. 1467, 1475 (D. Mass. 1984). In *Azko*, the Sixth Circuit held that the district court erred when it refused to consider an expert's affidavit because "public comment and state participation are to be encouraged and considered," and because the affidavit could help the court "determine the adequacy of the government agency's decision." 94 F.2d at 1427. Indeed, although neither party cites to cases within our Circuit, it does appear that the Eighth Circuit permits that the "existing administrative record … be supplemented, if necessary, by affidavits, depositions, or other proof of an explanatory nature. *Sierra Club v. U.S. Army Corps of Engineers*, 771 F.2d 409, 413 (8th Cir. 1985) (internal quotations omitted to *Arkla Exploration Co. v. Texas Oil & Gas Corp.,* 734 F.2d 347, 357 (8th Cir.1984), *cert. denied,* 469 U.S. 1158 (1985). "Any new materials submitted should, however, be merely explanatory of the original record and should contain no new rationalizations for the agency's decision." *Id.*; *see also Missouri Coalition for the Environment v. Corps of Engineers of U.S. Army*, 866 F.2d 1025, 1031 (8th Cir. 1989) ("In attempting to sort out and wade through the voluminous administrative record, it was not an abuse of the district court's discretion to allow testimony of an explanatory nature."), *abrogated on other grounds by Goos v. I.C.C.*, 911 F.2d 1283 (8th Cir. 1990)). It appears that such "explanatory" testimony is typically supplied by the agency. *See also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977). However, the Eighth Circuit has made clear that admission of explanatory expert evidence from both "plaintiffs and defendants" is proper to "educate the court and to illuminate the administrative record" so long as it does not

"substitute the court's judgment for the" agency's. *Arkla*, 734 F.2d at 357. Acordingly, the parties will be permitted to submit expert affidavits that are explanatory in nature.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion (#31) is granted in part and denied in part, as explained herein.

**IT IS FURTHER ORDERED** that the parties shall jointly submit a proposal for amending the remaining deadlines in the Case Management Order no later than October 14, 2015.

Dated this   1st   day of October, 2015.

                                    STEPHEN N. LIMBAUGH, JR.
                                    UNITED STATES DISTRICT JUDGE